# ATTACHMENT   A

CLOSED, CODEFT

# U.S. District Court
## District of Delaware (Wilmington)
## CRIMINAL DOCKET FOR CASE #: 1:99-cr-00019-SLR All Defendants

Case title: USA v. Garone, et al          Date Filed: 02/10/1998

Assigned to: Honorable Sue L.
Robinson

Appeals court case number: 99-6137

**Defendant**

**Dean A. Garone** (1)
*TERMINATED: 12/14/1999*

represented by **Penny Marshall**
Federal Public Defender's Office
First Federal Plaza, Suite 110
704 King Street
Wilmington, DE 19801
(302) 573-6010
Email: ecf_pm@msn.com
*TERMINATED: 12/14/1999*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or
Community Defender Appointment*

**Pending Counts**

21:843(b) - USE
COMMUNICATIONS FACILITY IN
POSSESSING WITH INTENT TO
DISTRIBUTE MARIJUANA (8/21/96
- 8/23/96)
(1s)

18:1956(a)(1)(A)(i) & (B)(i) MONEY
LAUNDERING - DISTRIBUTION OF
A CONTROLLED SUBSTANCE (8/95
- 1/97) SELL/DISTR/DISP
(2s)

**Disposition**

IMPRISONMENT 40 MONTHS TO
RUN CONSECUTIVELY W/CT. 2s;
SUPERVISED RELEASE 3 YEARS
TO RUN CONCURRENTLY W/CT.
2s; SPECIAL ASSESSMENT $100.00

IMPRISONMENT 47 MONTHS TO
RUN CONSECUTIVELY W/CT. 1s;
SUPERVISED RELEASE 3 YEARS
TO RUN CONCURRENTLY W/CT.
1s.; $100.00 SPECIAL ASSESSMENT

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

21:846 - CONSPIRACY TO

**Disposition**

| | |
|---|---|
| DISTRIBUTE MARIJUANA (CT. I - 8/95 THRU 01/97) (1) | DISMISSED ON GOVERNMENT'S MOTION |
| 18:1956(h) - CONSPIRACY TO MONEY LAUNDER (CT. II - 8/95 THRU 1/97) (2) | DISMISSED ON GOVERNMENT'S MOTION |
| 21:846 - CONSPIRACY TO DISTRIBUTE MARIJUANA (CT. III - 3/20/98) (3) | DISMISSED ON GOVERNMENT'S MOTION |
| 21:841(a)(1) & (b)(1)(D) - POSSESSION W/INTENT TO DISTRIBUTE MARIJUANA AND AIDING & ABETTING THE SAME (CT. IV - 3/20/98) (4) | DISMISSED ON GOVERNMENT'S MOTION |
| 18:1956(a)(1)(A)(i) & (B)(i) - MONEY LAUNDERING (CT. V - 1/22/96) (CT. VI - 4/2/96) (CT. VII - 5/4/96) (CT. VIII - 1/17/97) (CT. IX - 10/28/96) (5-9) | DISMISSED ON GOVERNMENT'S MOTION |
| 21:846 - CONSPIRACY TO DISTRIBUTE MARIJUANA (CT. X - 2/23/98 UNTIL 5/18/98) (10) | DISMISSED ON GOVERNMENT'S MOTION |

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                                     **Disposition**

None

---

Assigned to: Honorable Sue L. Robinson

**Defendant**

**Marvin Miller (2)**                   represented by   **Marvin Miller**
                                                          14079-112
                                                          Federal Correctional Institution
                                                          3600 Guard Road
                                                          Lompoc, CA 93436
                                                          PRO SE

                                                          **Michael McDonnell**

Michael R. Mc Donnell, Inc.
440 East La Habra Boulevard
La Habra, CA 90631
(562) 694-3827
*TERMINATED: 01/19/2000*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

18:1956(h) - CONSPIRACY (CT. I -
AUGUST 1995 THRU JANUARY
1997)
(1s)

**Disposition**

8 MONTHS IMPRISONMENT; 3
YEARS SUPERVISED RELEASE;
$100.00 SPECIAL ASSESSMENT;

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

18:1956(h) - CONSPIRACY TO
MONEY LAUNDER (CT. II - 8/95
THRU 1/97)
(2)

18:1956(a)(1)(A)(i) & (B)(i) - MONEY
LAUNDERING (CT. V - 1/22/96) (CT.
VI - 4/2/96) (CT. VII - 5/4/96) (CT.
VIII - 1/17/97) (CT. IX - 10/28/96)
(5-9)

**Disposition**

DISMISSED ON GOVERNMENT'S
MOTION

DISMISSED ON GOVERNMENT'S
MOTION

**Highest Offense Level (Terminated)**

Felony

**Complaints**

None

**Disposition**

---

**Plaintiff**

USA

represented by **Richard G. Andrews**
Delaware Department of Justice
Criminal Division
820 N. French Street
Wilmington, DE 19801
(302) 577-8805
Email: Rich.Andrews@state.de.us
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/09/1999 | 1 | MOTION by USA as to Dean A. Garone, Marvin Miller with Proposed Order to Seal Indictment & File (ljj) (Entered: 02/11/1999) |
| 02/09/1999 | | So Ordered as to Dean A. Garone, Marvin Miller granting [1-1] motion to Seal Indictment & File as to Dean A. Garone (1), Marvin Miller (2) ( Signed by Judge Mary P. Thynge ) Notice to counsel. (ljj) (Entered: 02/11/1999) |
| 02/09/1999 | 2 | SEALED INDICTMENT as to Dean A. Garone (1) count(s) 1-10, Marvin Miller (2) count(s) 2, 5-9 (ljj) (Entered: 02/11/1999) |
| 02/09/1999 | 3 | GOVT'S MOTION & ORDER for Issuance of BENCH Warrant as to Dean A. Garone ( Signed by Judge Mary P. Thynge ) (ljj) (Entered: 02/11/1999) |
| 02/09/1999 | 4 | GOVT'S MOTION & ORDER for Issuance of BENCH Warrant as to Marvin Miller ( Signed by Judge Mary P. Thynge ) (ljj) (Entered: 02/11/1999) |
| 02/09/1999 | | BENCH WARRANT issued as to Dean A. Garone, Marvin Miller (Exit USM.) (ljj) (Entered: 02/11/1999) |
| 02/09/1999 | | ARREST of Dean A. Garone in Central District of California (maw) (Entered: 02/24/1999) |
| 02/10/1999 | 5 | MOTION by USA as to Dean A. Garone, Marvin Miller with Proposed Order to Unseal Indictment & File (ljj) (Entered: 02/11/1999) |
| 02/10/1999 | | So Ordered as to Dean A. Garone, Marvin Miller granting [5-1] motion to Unseal Indictment & File as to Dean A. Garone (1), Marvin Miller (2) ( Signed by Judge Mary P. Thynge ) Notice to counsel. (ljj) (Entered: 02/11/1999) |
| 02/10/1999 | | Indictment unsealed as to Dean A. Garone, Marvin Miller (ljj) Modified on 02/11/1999 (Entered: 02/11/1999) |
| 02/12/1999 | 6 | BENCH WARRANT Returned Executed as to Dean A. Garone on 2/10/99 (ljj) (Entered: 02/12/1999) |
| 02/17/1999 | 7 | CASE assigned to Judge Sue L. Robinson (Copies to Judge, cnsl.) (ljj) (Entered: 02/17/1999) |
| 02/23/1999 | 8 | Rule 40 Documents as to Dean A. Garone received from Central District of California; Deft. arrested 2/9/99 and ordered permanently detained; Deft. removed to District of Delaware. (maw) (Entered: 02/24/1999) |
| 03/02/1999 | | Initial appearance held as to Dean A. Garone (Defendant informed of rights.)Thynge, U.S. Magis. Judge presiding; The Court appointed the Federal Public Defender to represent deft.; The Court detained the deft. based on the detention order that was entered in the Central District of |

| | | |
|---|---|---|
| | | California. The Court set Arraignment for 2:30 3/11/99 (ljj) (Entered: 03/05/1999) |
| 03/02/1999 | 9 | ORDER Appointing Federal Public Defender for Dean A. Garone, (Penny Marshall) (Signed by Judge Mary P. Thynge ) (Copies to cnsl, dft.) (ljj) (Entered: 03/05/1999) |
| 03/09/1999 | 10 | MOTION by Dean A. Garone For Detention Hearing & Release (ljj) (Entered: 03/10/1999) |
| 03/11/1999 | 11 | RESPONSE by USA as to Dean A. Garone re [10-1] motion For Detention Hearing & Release (ljj) (Entered: 03/12/1999) |
| 03/11/1999 | | Arraignment as to Dean A. Garone held; Thynge, U.S. Magis. Judge presiding; Deft. appeared w/cnsl. & entered a plea of not guilty to the indictment (ljj) (Entered: 03/12/1999) |
| 03/16/1999 | 12 | Rule 40 Documents as to Marvin Miller received from Central District of California (ljj) (Entered: 03/16/1999) |
| 03/16/1999 | | Deadline updated per calendar notice as to Dean A. Garone, set Detention Hearing for 11:00 3/19/99 for Dean A. Garone (ljj) (Entered: 03/16/1999) |
| 03/16/1999 | | Deadline updated per calendar notice as to Marvin Miller, set Initial Appearance for 8:30 3/25/99 for Marvin Miller , set Arraignment for 8:30 3/25/99 for Marvin Miller (ljj) (Entered: 03/16/1999) |
| 03/18/1999 | | Deadline updated per calendar notice as to Dean A. Garone, reset Detention Hearing for 11:00 3/22/99 for Dean A. Garone (ljj) (Entered: 03/18/1999) |
| 03/22/1999 | | Bond hearing as to Dean A. Garone held; Thynge, U.S. Magis. Judge presiding; The Court denied deft's motion for release (ljj) Modified on 03/23/1999 (Entered: 03/23/1999) |
| 03/25/1999 | | ARREST of Marvin Miller (ljj) (Entered: 03/25/1999) |
| 03/25/1999 | | Initial appearance held as to Marvin Miller (Defendant informed of rights.)Thynge, U.S. Magis. Judge presiding; Deft. appeared w/retained cnsl., Mike McDonnell, Esq.; The Court set bail at $15,000 unsec., w/pretrial suprv., 3rd pty. custodian and travel restrictions; Deft. was also arraigned - see event arraignment (ljj) (Entered: 03/25/1999) |
| 03/25/1999 | | Arraignment as to Marvin Miller held; Thynge, U.S. Magis. Judge presiding; Deft. appeared w/cnsl. and entered a plea of not guilty to the indictment (ljj) (Entered: 03/25/1999) |
| 03/25/1999 | 13 | ORDER Setting Conditions of Release as to Marvin Miller; Bond set to $15,000.00 unsecured w/pretrial suprv., 3rd pty. custodian and travel restrictions for Marvin Miller. ( Signed by Judge Mary P. Thynge ) (Copies to cnsl, USM, Prob, dft.) (ljj) (Entered: 03/25/1999) |
| 03/25/1999 | 14 | APPEARANCE BOND (unsecured) for Marvin Miller in the amount of $15,000.00; Executed by defendant (ljj) (Entered: 03/25/1999) |
| | | |

| 03/25/1999 | 15 | Steno Notes by Reporter Valerie J. Gunning as to Marvin Miller for 3/25/99 change of plea hrg. (ljj) (Entered: 03/25/1999) |
| 03/25/1999 | 16 | BENCH WARRANT Returned Executed as to Marvin Miller on 3/25/99 (ljj) (Entered: 03/25/1999) |
| 03/25/1999 | 17 | INFORMATION as to Marvin Miller (2) count(s) 1s (ljj) Modified on 03/26/1999 (Entered: 03/26/1999) |
| 03/25/1999 | | Change of Plea Hearing as to Marvin Miller held; Robinson, J. presiding; Ct. Rptr. V. Gunning; Govt. filed information in open court; Deft. entered a plea of guilty to the one count information; Waiver of indictment & Plea agreement filed by govt. & accepted by the Court; Sentencing set for 7/20/99 at 4:00 (ljj) (Entered: 03/26/1999) |
| 03/25/1999 | 18 | WAIVER OF INDICTMENT by Marvin Miller (ljj) (Entered: 03/26/1999) |
| 03/25/1999 | | PLEA entered by Marvin Miller . Court accepts plea. Guilty: Marvin Miller (2) count(s) 1s (ljj) (Entered: 03/26/1999) |
| 03/25/1999 | 19 | Plea Agreement as to Marvin Miller; Robinson, J. (ljj) (Entered: 03/26/1999) |
| 03/25/1999 | 20 | ORDER as to Marvin Miller, set Sentencing for 4:00 7/20/99 for Marvin Miller ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (ljj) (Entered: 03/26/1999) |
| 03/26/1999 | 21 | ORDER OF DETENTION as to Dean A. Garone denying [10-1] motion For Detention Hearing & Release as to Dean A. Garone ( Follows 3/22/99 oral order ) (1) ( Signed by Judge Mary P. Thynge ) (Copies to cnsl, USM, Prob.) (kjk) (Entered: 03/31/1999) |
| 03/30/1999 | | Deadline updated as to Dean A. Garone, Set Telephone Conference for 9:15 3/31/99 for Dean A. Garone per notice (rbe) (Entered: 03/30/1999) |
| 03/31/1999 | | Deadline updated per calendar notice as to Dean A. Garone, set Telephone Conference for 10:00 4/20/99 for Dean A. Garone (maw) (Entered: 03/31/1999) |
| 04/01/1999 | 22 | Steno Notes by Reporter Brian P. Gaffigan as to Dean A. Garone for 3/31/99 Teleconference (rbe) (Entered: 04/01/1999) |
| 04/20/1999 | 23 | MOTION by Dean A. Garone with Proposed Order to Suppress Statements & Evidence (ljj) (Entered: 04/20/1999) |
| 04/21/1999 | 24 | Steno Notes by Reporter Brian P. Gaffigan as to Dean A. Garone, Marvin Miller for 4/20/99 T/C (ljj) (Entered: 04/21/1999) |
| 04/22/1999 | | Deadline updated per calendar notice as to Dean A. Garone, Set Telephone Conference for 9:00 5/4/99 for Dean A. Garone (rbe) (Entered: 04/22/1999) |
| 05/03/1999 | 25 | LETTER from Penny Marshall, Esq. to Judge Robinson requesting that the status set for 5/4/99 be continued as to Dean A. Garone (ljj) (Entered: |

| | | 05/04/1999) |
|---|---|---|
| 07/15/1999 | 26 | Letter MOTION by USA as to Marvin Miller to Continue Sentencing Indefinitely (ljj) (Entered: 07/16/1999) |
| 07/20/1999 | | Deadline updated per calendar notice as to Dean A. Garone, set Telephone Conference for 11:00 7/22/99 for Dean A. Garone (ljj) (Entered: 07/21/1999) |
| 07/22/1999 | 27 | ORDER as to Dean A. Garone, set Evidentiary Hearing for 10:00 9/1/99 for Dean A. Garone ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (ljj) (Entered: 07/23/1999) |
| 07/23/1999 | 28 | RESPONSE by USA as to Dean A. Garone re [23-1] motion to Suppress Statements & Evidence (ljj) (Entered: 07/23/1999) |
| 07/28/1999 | 29 | Steno Notes by Reporter Gaffigan as to Dean A. Garone for 7/22/99 Teleconference (maw) (Entered: 07/29/1999) |
| 08/31/1999 | 30 | LETTER by USA as to Dean A. Garone re: enclosing proposed plea agreement and request that a change of plea hearing be scheduled (ljj) (Entered: 08/31/1999) |
| 09/01/1999 | 31 | SUPERSEDING INFORMATION as to Dean A. Garone (1) count(s) 1s, 2s (maw) (Entered: 09/02/1999) |
| 09/01/1999 | 32 | WAIVER OF INDICTMENT by Dean A. Garone (maw) (Entered: 09/02/1999) |
| 09/01/1999 | | Change of Plea Hearing as to Dean A. Garone held, Judge Robinson presiding; Deft. was present with counsel and entered a plea of guilty to the Information; Sentencing set for 12/1/99 at 4:00 PM. (maw) (Entered: 09/02/1999) |
| 09/01/1999 | | PLEA entered by Dean A. Garone . Court accepts plea. Guilty: Dean A. Garone (1) count(s) 1s, 2s (Terminated motions: [23-1] motion to Suppress Statements & Evidence as to Dean A. Garone (1) ) (maw) (Entered: 09/02/1999) |
| 09/01/1999 | 33 | Plea Agreement as to Dean A. Garone (maw) (Entered: 09/02/1999) |
| 09/01/1999 | | Plea Agreement Accepted as to Dean A. Garone ( by Judge Sue L. Robinson ) (maw) (Entered: 09/02/1999) |
| 09/01/1999 | | Deadline updated per minute sheet as to Dean A. Garone, set Sentencing for 4:00 12/1/99 for Dean A. Garone (maw) (Entered: 09/02/1999) |
| 09/02/1999 | 34 | Steno Notes by Reporter K. Maurer as to Dean A. Garone for 9/1/99 Plea (maw) (Entered: 09/02/1999) |
| 09/07/1999 | 35 | ORDER dated 9/2/99 as to Dean A. Garone, set Sentencing for 4:00 12/1/99 for Dean A. Garone ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (ljj) (Entered: 09/07/1999) |
| 10/26/1999 | 36 | ORDER as to Marvin Miller, reset Sentencing for 4:00 1/11/00 for |

| | | Marvin Miller ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (ljj) (Entered: 10/27/1999) |
|---|---|---|
| 12/01/1999 | | Time Set for Sentencing Hearing as to Dean A. Garone - Sentencing contiued to resolve matters raised by the Court (maw) (Entered: 12/07/1999) |
| 12/02/1999 | 37 | LETTER by AUSA, Richard Andrews to Judge Robinson in response to the question raised by the Court on 12/1/99 as to Dean A. Garone (ljj) (Entered: 12/02/1999) |
| 12/03/1999 | 38 | Steno Notes by Reporter Dibbs. as to Dean A. Garone for 12/1/99 (maw) (Entered: 12/07/1999) |
| 12/03/1999 | 39 | ORDER as to Dean A. Garone, reset Sentencing for 9:00 12/14/99 for Dean A. Garone ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (maw) (Entered: 12/07/1999) |
| 12/13/1999 | 40 | LETTER by Penny Marshall, Esq. to Judge Robinson as to Dean A. Garone; Re: Sentencing/Departure (ljj) (Entered: 12/14/1999) |
| 12/14/1999 | | Sentencing held Dean A. Garone (1) count(s) 1s, 2s; Robinson, J. presiding; Deft. appeared w/cnsl.; Sent. of the Court: Ct. 1s 40 mos. impris. to run consec. w/ct. 2s and 3 yrs. suprv. rel. to run conc. w/ct. 2s; Ct. 2s 47 mos. impris. to run consec. w/ct. 1s & 3 yrs. suprv. rel. to run conc. w/ct. 1s; $100.00 spec. assess. on each count (ljj) (Entered: 12/20/1999) |
| 12/14/1999 | | JUDGMENT registered against defendant Dean A. Garone (ljj) (Entered: 12/20/1999) |
| 12/14/1999 | 41 | MOTION by USA as to Dean A. Garone with Proposed Order to Dismiss the Indictment (ljj) (Entered: 12/20/1999) |
| 12/14/1999 | | So Ordered as to Dean A. Garone granting [41-1] motion to Dismiss the Indictment as to Dean A. Garone (1) ( Signed by Judge Sue L. Robinson ) Notice to counsel. (ljj) (Entered: 12/20/1999) |
| 12/14/1999 | | DISMISSAL of Count(s) on Government Motion as to Dean A. Garone party Dean A. Garone Counts Dismissed: Dean A. Garone (1) count(s) 1-10 (ljj) (Entered: 12/20/1999) |
| 12/14/1999 | 42 | Steno Notes by Reporter Kevin J. Maurer as to Dean A. Garone for 12/14/99 sentencing hrg. (ljj) (Entered: 12/20/1999) |
| 12/17/1999 | | Deadline updated per calendar ntc. as to Marvin Miller, reset Sentencing for 8:30 1/11/99 for Marvin Miller (ljj) (Entered: 12/17/1999) |
| 12/17/1999 | 43 | JUDGMENT as to Dean A. Garone (1) count(s) 1s. IMPRISONMENT 40 MONTHS TO RUN CONSECUTIVELY W/CT. 2s; SUPERVISED RELEASE 3 YEARS TO RUN CONCURRENTLY W/CT. 2s; SPECIAL ASSESSMENT $100.00 , Dean A. Garone (1) count(s) 2s. IMPRISONMENT 47 MONTHS TO RUN CONSECUTIVELY W/CT. 1s; SUPERVISED RELEASE 3 YEARS TO RUN CONCURRENTLY |

| | | W/CT. 1s.; $100.00 SPECIAL ASSESSMENT ( Signed by Judge Sue L. Robinson ) (Copies to cnsl, USM, Prob, FOB.) (ljj) (Entered: 12/20/1999) |
|---|---|---|
| 12/20/1999 | 44 | NOTICE OF APPEAL by Dean A. Garone (1) count(s) 1s, 2s Time: 10:18 a.m. (cc:USCA-certif., AUSA, & DEFT. at MPCJF by reg. mail) (ljj) Modified on 12/21/1999 (Entered: 12/21/1999) |
| 12/21/1999 | | Notice of appeal and certified copy of docket as to Dean A. Garone to USCA: [44-1] appeal (ljj) (Entered: 12/21/1999) |
| 12/29/1999 | 45 | Return of undeliverable mail (copy of appeal & info sheet to USCA) sent to defendant Dean A. Garone; Re: MOVED LEFT NO ADDREES -(RE-MAILED TO FCI FAIRTON, FAIRTON, NJ) (ljj) (Entered: 12/29/1999) |
| 12/29/1999 | 46 | Transcript requested of change of plea & sentencing hrg. in appeal as to Marvin Miller [44-1] appeal (ljj) (Entered: 12/29/1999) |
| 12/30/1999 | 47 | Transcript of change of plea & sentencing requested in appeal as to Dean A. Garone [44-1] appeal (ljj) (Entered: 01/04/2000) |
| 01/04/2000 | 48 | NOTICE of Docketing ROA from USCA as to Dean A. Garone Re: [44-1] appeal USCA Number: 99-6137 (ljj) (Entered: 01/04/2000) |
| 01/05/2000 | 49 | MOTION by USA as to Marvin Miller for Substantial Assistance Pursuant To Sentencing Guideline Sec.5K1.1 (ljj) (Entered: 01/06/2000) |
| 01/06/2000 | 50 | MOTION & MEMORANDUM by Marvin Miller for Downward Departures (ljj) (Entered: 01/07/2000) |
| 01/06/2000 | 52 | LETTER dtd. 1/4/00 by Michael R. McDonnell, Esq. to Clerk/Judge Robinson as to Marvin Miller; Re: downward depart. motion (ljj) (Entered: 01/07/2000) |
| 01/07/2000 | 51 | RESPONSE by USA as to Marvin Miller re [50-1] Motion & Memorandum for Downward Departures (ljj) (Entered: 01/07/2000) |
| 01/11/2000 | | So Ordered as to Marvin Miller granting [49-1] motion for Substantial Assistance Pursuant To Sentencing Guideline Sec.5K1.1 as to Marvin Miller (2) ( Signed by Judge Sue L. Robinson ) Notice to counsel. (ljj) (Entered: 01/11/2000) |
| 01/11/2000 | 53 | MOTION by USA as to Marvin Miller with Proposed Order to Dismiss the Indictment (ljj) (Entered: 01/11/2000) |
| 01/11/2000 | | So Ordered as to Marvin Miller granting [53-1] motion to Dismiss the Indictment as to Marvin Miller (2) ( Signed by Judge Sue L. Robinson ) Notice to counsel. (ljj) (Entered: 01/11/2000) |
| 01/11/2000 | | DISMISSAL of Count(s) on Government Motion as to Marvin Miller Counts Dismissed: Marvin Miller (2) count(s) 2, 5-9 (ljj) (Entered: 01/11/2000) |
| 01/11/2000 | | Sentencing held Marvin Miller (2) count(s) 1s; Robinson, J. presiding; Ct. Rptr. B. Gaffigan: Sent. of the Court: 8 mos. impris.; 3 yrs. suprv. |

|  |  | rel.; $100 spec. assess. (ljj) (Entered: 01/24/2000) |
|---|---|---|
| 01/11/2000 |  | JUDGMENT registered against defendant Marvin Miller (ljj) (Entered: 01/24/2000) |
| 01/12/2000 | 54 | TRANSCRIPT filed as to Dean A. Garone for dates of 9/1/99 change of plea hrg. Re: Court Reporter: Kevin J. Maurer (ljj) (Entered: 01/12/2000) |
| 01/12/2000 | 55 | TRANSCRIPT filed as to Dean A. Garone for dates of 12/14/99 sentencing hrg. Re: Court Reporter: Kevin J. Maurer (ljj) (Entered: 01/12/2000) |
| 01/13/2000 | 56 | Steno Notes by Reporter Brian P. Gaffigan as to Marvin Miller for 1/11/00 sentencing hrg. (ljj) (Entered: 01/14/2000) |
| 01/19/2000 | 57 | TRANSCRIPT filed as to Marvin Miller for dates of 1/11/00 Excerpt of sent. hrg. Re: Court Reporter: Brian P. Gaffigan (ljj) (Entered: 01/19/2000) |
| 01/19/2000 | 58 | JUDGMENT dtd. 1/18/00 as to Marvin Miller (2) count(s) 1s. 8 MONTHS IMPRISONMENT; 3 YEARS SUPERVISED RELEASE; $100.00 SPECIAL ASSESSMENT; ( Signed by Judge Sue L. Robinson ) (Copies to cnsl, USM, Prob, FOB.) party Marvin Miller (ljj) (Entered: 01/24/2000) |
| 02/29/2000 |  | Judgment Returned Executed as to Dean A. Garone ; executed on 1/25/00; deft. delivered to FCI - SAF at Safford, AZ (ret. attach. to orig. jgm., DI# 43) (ljj) (Entered: 02/29/2000) |
| 07/31/2000 | 59 | JUDGMENT OF USCA (certified copy) with MEMORANDUM OPINION and Transmittal letter to Clerk, as to Dean A. Garone Re: [44-1] appeal affirming judgment/order Dean A. Garone (1) count(s) 1s, 2s (Copies to Judge, USM.) (rbe) Modified on 07/31/2000 (Entered: 07/31/2000) |
| 03/21/2001 | 60 | Pro Se Letter MOTION by Dean A. Garone to Vacate under 28 U.S.C. 2255 (rbe) (Entered: 04/26/2001) |
| 03/28/2001 | 61 | ORDER as to Dean A. Garone, set AEDPA Election deadline as to 4/23/01 for Dean A. Garone ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (kjk) (Entered: 03/30/2001) |
| 04/23/2001 | 62 | AEDPA Election form by Dean A. Garone with letter; Petitioner elects to withdraw the 2255 petition with intent to file on that is all inclusive (kjk) (Entered: 04/27/2001) |
| 04/30/2001 | 63 | ACKNOWLEDGMENT OF RECEIPT received from the U.S. Attorney's office re: service of 2255 petition as to Dean A. Garone (kjk) (Entered: 05/01/2001) |
| 05/07/2001 | 65 | LETTER with Motion to Dismiss by Dean A. Garone to the clerk's office re: requesting the court not to consider the 2255 motion; ( cc: Chief Judge Robinson and pro se' clerk ) (kjk) (Entered: 05/15/2001) |
| 05/08/2001 | 64 | ORDER as to Dean A. Garone granting [62-1] notice to withdraw 2255 |

| | | petition as to Dean A. Garone (1) ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (kjk) (Entered: 05/11/2001) |
|---|---|---|
| 05/29/2001 | 66 | MOTION by Dean A. Garone with Proposed Order to Vacate under 28 U.S.C. 2255 ( cc: SLR, pro se' clerk ) (kjk) (Entered: 06/07/2001) |
| 06/15/2001 | 67 | MILLER ORDER and AEDPA Election Form as to Dean A. Garone, set Status Report deadline to 7/13/01 for Dean A. Garone ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (kjk) (Entered: 06/18/2001) |
| 07/12/2001 | 68 | NOTICE ( AEDPA ELECTION FORM ) returned by Dean A. Garone requesting to Amend the 2255 Petition (kjk) (Entered: 07/18/2001) |
| 07/26/2001 | 70 | Order (Prob Form 22) From Probation jurisdiction transferred out as to Marvin Miller. Transmitted to Central District of California Transfer of Jurisdiction form, with certified copies of information, judgment and docket sheet. (ljj) (Entered: 08/07/2001) |
| 08/02/2001 | 69 | ORDER as to Dean A. Garone, Set Reply Deadline to 9/14/01 for the Government to respond to defendant Dean A. Garone's [66-1] motion to Vacate under 28 U.S.C. 2255 and Amended Memorandum in support of the motion (D.I. 68) ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (rbe) (Entered: 08/03/2001) |
| 08/07/2001 | | Exit Probation 22 Transfer Record to the Central District of California, 411 W. 4th St., Suite 1053, Santa Ana, CA 92701-4516 (ljj) (Entered: 08/07/2001) |
| 08/20/2001 | 71 | ACKNOWLEDGMENT OF RECEIPT as to Marvin Miller received from the Central District of California (kjk) (Entered: 08/22/2001) |
| 09/13/2001 | 72 | RESPONSE by USA as to Dean A. Garone in opposition to [66-1] motion to Vacate under 28 U.S.C. 2255 (kjk) (Entered: 09/18/2001) |
| 10/22/2001 | 73 | RESPONSE by Dean A. Garone in opposition to the government's [72-1] opposition response to the petitioner's 2255 motion (kjk) (Entered: 10/25/2001) |
| 12/04/2002 | 74 | MEMORANDUM OPINION as to Dean A. Garone ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (kjk) (Entered: 12/06/2002) |
| 12/04/2002 | 75 | ORDER as to Dean A. Garone denying [66-1] motion to Vacate under 28 U.S.C. 2255 and denying a certificate of appealability as to Dean A. Garone (1) ( Signed by Judge Sue L. Robinson ) (Copies to cnsl.) (kjk) (Entered: 12/06/2002) |
| 09/27/2005 | 76 | Probation Petition to Modify Conditions of Release (Attachments: # 1 Waiver of Hearing to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision)(fmt, ) (Entered: 09/27/2005) |
| 09/27/2005 | | SO ORDERED, as to Dean A. Garone re 76 MOTION to Modify Conditions of Release; conditions of supervised release modified, additional condition: Dean A. Garone shall abstain from using illicit drugs, using alcohol, and abusing prescription medication during the |

| | | period of supervision. Signed by Judge Sue L. Robinson on 9/27/05. (fmt, ) (Entered: 09/27/2005) |
|---|---|---|
| 04/13/2007 | 77 | PETITION for Writ of Error Coram Nobis (28 U.S.C. 1651(a)) by Marvin Miller. (fmt) (Entered: 04/17/2007) |
| 04/20/2007 | 78 | Letter to Clerk from Marvin Lee Miller requesting a copy of docket sheet. (fmt) (Entered: 04/23/2007) |
| 04/24/2007 | 79 | Letter to Marvin Miller from Clerk regarding request for copy of docket sheet. (fmt) (Entered: 04/24/2007) |
| 05/14/2007 | 80 | Letter to Clerk from Marvin Lee Miller regarding Certificate of Service Correction - re 77 MOTION for Writ filed by Marvin Miller. (fmt) (Entered: 05/18/2007) |
| 05/14/2007 | 81 | Corrected Notice of Service by Marvin Miller re 77 MOTION for Writ (fmt) (Entered: 05/18/2007) |
| 01/07/2008 | 82 | Letter to Clerk of Court from Marvin Miller regarding status of Petition for Coram Nobis - re 77 MOTION for Writ filed by Marvin Miller. ( Original SEALED - to be maintained in the clerk's office ). (kjk) (Entered: 01/15/2008) |
| 01/07/2008 | 83 | REDACTED VERSION of [82] Letter to the Clerk of Court by Marvin Miller. (kjk) (Entered: 01/15/2008) |
| 01/16/2008 | 84 | ORDER as to Marvin Miller re 83 Redacted Document filed by Marvin Miller, 77 MOTION for Writ filed by Marvin Miller Government Responses due by 2/1/2008; Deft. may reply by 3/18/08.. Signed by Judge Sue L. Robinson on 1/16/08. (kjk) (Entered: 01/17/2008) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/17/2008 11:59:44 | | | |
| **PACER Login:** | du5440 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:99-cr-00019-SLR Start date: 1/1/1970 End date: 1/17/2008 |
| **Billable Pages:** | 8 | **Cost:** | 0.64 |

# ATTACHMENT   B

✎AO 245B  (8/96) Judgment in a Criminal C.

# UNITED STATES DISTRICT COURT

District of _____ DELAWARE _____

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **V.** | (For Offenses Committed On or After November 1, 1987) |
| MARVIN LEE MILLER | Case Number:     1:99CR00019-002 |

Mike McDonnell, Esq.
Defendant's Attorney

## THE DEFENDANT:

X    pleaded guilty to count(s)  1 of the Information

☐    pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐    was found guilty on count(s) _____
after a plea of not guilty.

| **Title & Section** | **Nature of Offense** | **Date Concluded** | **Count Number(s)** |
|---|---|---|---|
| 18 U.S.C. 1956(h) | Conspiracy to commit money laundering | Jan. 1997 | 1 |

The defendant is sentenced as provided in pages 2 through     6     of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s) _____

Count(s) _____  ☐ is   ☐ are  dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec.    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 | 1/11/00 |
| | Date of Imposition of Judgment |
| Defendant's Date of    8/19/72 | |
| Defendant's USM No.:    14079912 | *[signature] Sue L. Robinson* |
| | Signature of Judicial Officer |
| Defendant's Residence Address: | |
| 124 S. Hewes Street | |
| Orange, CA 92869 | The Honorable Sue L. Robinson |
| | Name and Title of Judicial Officer |
| | 1/18/00 |
| | Date |
| Defendant's Mailing Address: | |
| same as above | |

AO 245B    (8/96)  Sheet 2—Imprisonment

| | |
|---|---|
| DEFENDANT:    Miller, Marvin Lee | Judgment — Page ___2___ of ___6___ |
| CASE NUMBER:    1:99CR00019-002 | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total total term of _____8 months_____ .

X    The court makes the following recommendations to the Bureau of Prisons:
That the defendant be placed in an institution near his family members in California.

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at _____ ☐ a.m.  ☐ p.m.  on _____ .

    ☐    as notified by the United States Marshal.

X    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. on _____ .

    X    as notified by the United States Marshal's service.

    ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

AO 245B    (8/96) Sheet 3—Supervised Re''

DEFENDANT:    Miller, Marvin Lee
CASE NUMBER:    1:99CR00019-002

Judgment—Page _____ of _____

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of    3 years. The first
8 months of supervised release shall be served in a community facility. If a
community facility is not available, than it shall be served by house arrest.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐    The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (8/96) Judgment in a Criminal (
          Sheet 3 — Reverse — Supervised Release

DEFENDANT:    Miller, Marvin Lee                    Judgment—Page _____ of _____
CASE NUMBER:  1:99CR00019-002

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall participate in a drug aftercare treatment program which may include urine testing, at the direction and discretion of the probation officer.

The defendant shall participate in a mental health treatment program which may include urine testing, at the direction and discretion of the probation officer.

AO 245B    (8/96) Sheet 5, Part A—Criminal        .etary Penalties

| | |
|---|---|
| DEFENDANT:    Miller, Marvin Lee | Judgment — Page _____ of _____ |
| CASE NUMBER:    1:99CR00019-002 | |

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on on Sheet 5, Part B.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **Totals:** | $    100.00 | $ | $ |

If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . . . . . .    $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $    _____ .

The defendant shall pay interest on any fine more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f).  All of the options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐    The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐    The interest requirement is waived.

    ☐    The interest requirement is modified as follows:

## RESTITUTION

☐    The determination of restitution is deferred until _____ .  An Amended Judgment in a Criminal Case will be entered after such determination.

☐    The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | *Total Amount of | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |
| **Totals:** | $ _____ | $ _____ | |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B    (8/96)  Sheet 5, Part B—Criminal  .etary Penalties

DEFENDANT:       Miller, Marvin Lee
CASE NUMBER:     1:99CR00019-002

Judgment — Page _____ of _____

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

**A**  X  In full immediately; or

**B**  ☐  $ _____  immediately, balance due (in accordance with C, D, or E); or

**C**  ☐  not later than  _____  ; or

**D**  ☐  in installments to commence  _____  days after the date of this judgment.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

**E**  in  _____  (*e.g., equal, weekly, monthly, quarterly*) installments of $ _____  over a period of _____ year(s) to commence  _____  days after the date of this judgment.

The defendant will be credited for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

Criminal monetary penalty payments, with the exception of restitution, should be made payable to Clerk, U.S. District Court.  Any restitution ordered is to be made payable to the victim, and collected by the U.S. Probation Office.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are to be  made as directed by the court, the probation officer, or the United States attorney.

AO 245B    (8/96) Sheet 6—Statement of Re.

DEFENDANT:        Miller, Marvin Lee
CASE NUMBER:    1:99CR00019-002

Judgment — Page _____ of _____

## STATEMENT OF REASONS

X    The court adopts the factual findings and guideline application in the presentence report.

### OR

☐    The court adopts the factual finding and guideline application in the presentence report except (see attachment, if necessary):


**Guideline Range Determined by the Court:**

Total Offense Level: _____ 22 _____

Criminal History Category: _____ II _____

Imprisonment Range: _____ 46 _____ to _____ 57 _____ months

Supervised Release Range: _____ 2 _____ to _____ 3 _____ years

Fine Range: $ __7,500__ to $ __500,000__

☐    Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

☐    Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐    For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐    Partial restitution is ordered for the following reason(s):


☐    The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

### OR

☐    The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons:


### OR

X    The sentence departs from the guideline range:

XX    upon motion of the government, as a result of defendant's substantial assistance.

for the following specific reason(s):

CERTIFIED :
AS A TRUE COPY :
ATTEST :
PETER T. DALLEO, CLERK

BY _____
Deputy Clerk

# ATTACHMENT   C

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

**H**

U.S. v. Ramsey
E.D.Pa.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
UNITED STATES OF AMERICA
v.
Gary RAMSEY
**No. CRIM.A. 01-005-04.**

Feb. 10, 2006.

Nancy Beam Winter, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Memorandum and Order

YOHN, J.

*1 Defendant Gary Ramsey has filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255. Ramsey argues that he should be resentenced because: 1) a state court has vacated a conviction that served as a predicate to the career offender enhancement that this court applied in his original sentencing, and 2) his sentence violates the constitutional rule of criminal procedure announced by the United States Supreme Court in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and that he should be able to present an argument based on that case on habeas review because he raised a similar claim based on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), on direct appeal. For the reasons set forth below, I will deny the motion.

I. Factual History

On August 30, 2000, Ramsey and Marcus Jackson entered the Lansdale First Union Bank, both armed with semiautomatic weapons. Jackson headed to the rear of the bank, where the vault is located, and forced two supervisors into a side office. He struck one supervisor in the head, shattering his ear drum. Jackson then dragged the other

supervisor toward the vault and demanded that she open it. In the process, he struck her in the face several times and threatened to kill her. Eventually, she opened the day vault, a coin vault, and her teller station, from which Jackson removed money. At the same time, Ramsey took charge of the front of the bank. He kept his gun trained on the tellers and customers, and, after suspecting that one teller had sounded an alarm, he fired his gun at her, narrowly missing. Ultimately, the robbers escaped with $67,259.

Ramsey committed a second robbery on November 24, 2000. He organized and planned this robbery, and also recruited two other men, Demond Wright and John McClure, to participate. On November 24, the men first traveled to Pikeland Elementary School, which was closed that day. They entered a second-grade classroom, and, using gasoline as an accelerate, set it ablaze as a diversion to the local police. The fire department was summoned and put out the fire, but not before the classroom was completely destroyed and an entire wing of the school was damaged. This arson caused $550,000 of damage.

While law enforcement was responding to the fire, Ramsey, Wright, and McClure entered the Valley Forge Mall First Union Bank. They threatened to kill everyone inside the bank if anyone called the police, and, at gunpoint, ordered five employees and seven customers to the ground. The men were able to steal $275,920. However, one customer managed to slip away, and told a civilian witness, J.K., about the ongoing robbery. J.K., who was in his own car, noticed a white minivan with its engine running parked outside the bank. J.K. then saw Ramsey, Wright, and McClure enter the van, and when the van pulled away, he followed it. He followed the van to a parking lot, where the three men exited the van and entered two different cars, which were waiting with their engines running. Wright and McClure entered a Cadillac, and Ramsey entered a Ford Taurus. J.K. then followed the Cadillac (while Ramsey's Taurus went a different dir-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

ection), and continued to report to the police. Eventually, law enforcement agents Officer Barrett, Corporal Nemic, and Officer Sousa were able to stop the Cadillac, which was driven by Donna Thomas. Officer Barrett ordered Donna Thomas to exit the vehicle, and she complied. The officers then ordered McClure, who was sitting in the front passenger seat, and Wright, who was sitting in the backseat, to put their hands in the air. Instead, McClure started the car, and Wright pointed a gun at Officer Barrett. McClure then drove the car directly at Officer Sousa, while Officer Barrett and Wright began trading gunfire. During the shootout, Corporal Nemic suffered a detached retina of his right eye and two puncture wounds to his right ear. A four-and-a-half-mile chase ensued, during which the police and Wright traded gunfire. Eventually the Cadillac crashed into a guardrail and McClure and Wright were apprehended, but only after a struggle in which the men tried to force their way into three occupied automobiles which just happened to be in the area of the crash.

*2 Ramsey was not arrested until March 4, 2001. On that date he called a friend, who then contacted the police and provided them with the phone number from which Ramsey had called. The police tracked that phone number and were able to locate and arrest Ramsey.

II. Procedural History

On May 3, 2001, Ramsey was charged in a third superseding indictment with: 1) conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371 (count one); 2) armed bank robbery and aiding and abetting the same in violation of 18 U.S.C. §§ 2113(d) and 2 (counts two and eleven); 3) using, carrying, and brandishing a firearm and aiding and abetting the same in violation of 18 U.S.C. §§ 924(c)(1) and 2 (counts three and twelve); 4) using, carrying, and discharging a firearm during the armed bank robbery and aiding and abetting the same in violation of 18 U.S.C. §§ 924(c)(1) and 2 (counts four and thirteen); 5) using fire to commit a felony and aiding and abetting the

same in violation of 18 U.S.C. §§ 844(h)(1) and 2 (count five); and 6) maliciously damaging and destroying by means of fire a building involved in interstate commerce and aiding and abetting the same in violation of 18 U.S.C. §§ 844(I) and 2 (count six).

On October 19, 2001, a jury found Ramsey guilty of all charges. On October 9, 2002, this court sentenced Ramsey to 900-months imprisonment.FN1Ramsey's sentence was enhanced due to his prior criminal convictions and certain facts surrounding the two robberies.FN2Those facts were not submitted to a jury to be proven beyond a reasonable doubt. Ramsey filed an appeal, which was denied by the Third Circuit on October 3, 2003. He did not file a petition for writ of certiorari with the United States Supreme Court.

> FN1. Based on Ramsey's Total Offense Level of 39 and Criminal History Category of VI, the guideline range for imprisonment was 360 months to life for count six, 60 months for count one, and 300 months for counts two and eleven. I sentenced Ramsey to the lowest point on count six's range, 360 months imprisonment, to run concurrently with the sentence on counts one, two, and eleven. However, Ramsey was also subject to mandatory consecutive sentences of 120 months (for count thirteen), 300 months (for count four), and 120 months (for count five). Thus, despite the court's sentencing Ramsey to the lowest point of the guideline range, the application of the three mandatory consecutive sentences resulted in a total sentence of 900 months.

> FN2. The court found that, *inter alia:* a police officer sustained serious bodily injury (a detached retina) as a result of the gun battle following the robbery, Ramsey created a substantial risk of death or serious bodily injury to another person by fleeing from a law enforcement officer, and Ramsey organized the Valley Forge First Union

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

bank robbery and recruited two other people to participate in the robbery.

On September 20, 2004, Ramsey filed this Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255, asserting twenty claims. The court has denied or Ramsey has withdrawn eighteen of those claims, [FN3] leaving only two to be resolved in this memorandum. Specifically, the court must rule upon Ramsey's claims that he should be resentenced because: 1) one of his state convictions underlying the career offender enhancement has been vacated; and 2) the court violated the Sixth Amendment, as interpreted by *Booker*, by enhancing his sentence under the United States Sentencing Guidelines based on facts found by the court alone, and he preserved his right to collaterally attack his sentence pursuant to the rule of *Booker* by asserting a claim under *Apprendi* on direct appeal. The court finds that both of these arguments are without merit and will deny Ramsey's § 2255 motion.

> FN3. Ramsey's § 2255 motion presented the following claims: 1) his attorney was ineffective during the suppression hearing for advising Ramsey not to testify; 2) his attorney was ineffective during the suppression hearing for not calling a Pottstown police officer to testify on Ramsey's behalf; 3) his attorney was ineffective during the plea negotiations because a plea agreement was not consummated; 4) his attorney was ineffective during the trial for failing to object to the introduction of allegedly inadmissible evidence; 5) his attorney was ineffective during trial for failing to object to the jury instruction regarding counts three and four; 6) his attorney was ineffective during trial for failing to object to the government's alleged failure to connect Ramsey's actions to interstate commerce; 7) his attorney was ineffective during a pretrial hearing for failing to have a doctor examine Ramsey and testify about his medical state; 8) the court erred in admitting the allegedly perjurious testimony

of government agents and Pottstown police officers; 9) his attorney was ineffective for failing to object to sentencing enhancements for bodily harm; 10) his attorney was ineffective during plea negotiations for not securing a plea agreement for Ramsey; 11) his attorney was ineffective at trial for not objecting to the jury instructions that allegedly improperly removed from the jury the factual finding as to whether the bank was federally insured; 12) his attorney was ineffective during trial for failing to object to the jury instruction regarding the § 2113(d) charge; 13) his attorney was ineffective during the pretrial hearing for failing to file a motion alleging selective prosecution; 14) the court erred by applying the career offender enhancement since one of his predicate convictions has been overturned; 15) his attorney was ineffective for failing to pursue an appeal on certain grounds; 16) the court erred in finding facts that resulted in sentencing enhancements; 17) his attorney was ineffective for failing to object to the FDIC-insured status of the bank and the government attorney's opening statement as to that fact; 18) prosecutorial misconduct; 19) judicial error because the prosecutor did not turn over files regarding similarly-situated individuals; and 20) the court committed a sentencing error in violation of the Double Jeopardy Clause when it sentenced Ramsey under both 18 U.S.C. §§ 924(c) and 2113(d). On September 8, 2005, Ramsey voluntarily withdrew claims 5, 6, 7, 9, 10, 11, 12, and 19. Then, on December 21, 2005, after an evidentiary hearing and oral argument, the court denied claims 1, 2, 3, 4, 13, 15, 17, 18, and 20 for the reasons set forth on the record and Ramsey withdrew claim 8.

III. Discussion

A. Ramsey's Challenge to his Career Offender Designation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

In Ramsey's first remaining claim, he argues that he should be resentenced, under the now-advisory United States Sentencing Guidelines, because in his original sentencing the court found that he was a career offender and applied the attendant guideline enhancement. Now, Ramsey argues, the state court has vacated one of the two convictions upon which his career-offender status was based, so his sentence should no longer be valid.[FN4]However, because his sentence was not actually enhanced due to his career-offender status, this claim will be denied.

> FN4. The parties agreed that the state conviction was vacated and that this occurred sometime after Ramsey's direct review was final.

*3 A defendant may use a 28 U.S.C. § 2255 motion to challenge a federal sentence when a state conviction that was used to enhance the federal sentence has been vacated. In *Custis v. United States,* 511 U.S. 485, 487, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the Supreme Court held that a defendant could not use the federal sentencing forum to gain review of his state convictions, [FN5] but stated that "[i]f Custis is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences."[FN6]Similarly, in *United States v. Escobales,* 218 F.3d 259, 261 (3d Cir.2000), the Third Circuit explained that if a defendant successfully challenges an underlying conviction, "the defendant can then apply for reopening of any federal sentence enhanced by the state sentence or file a 28 U.S.C. § 2255 petition challenging his federal sentence."

> FN5. The court created an exception to this general rule for "convictions obtained in violation of the right to counsel,"*Custis v. United States,* 511 U.S. 485, 487, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), which is not relevant here.

> FN6. Although *Custis* dealt with a statutory sentence enhancement from the

Armed Career Criminal Act of 1984, its rule is equally applicable to an enhancement from the United States Sentencing Guidelines. *See United States v. Thomas,* 42 F.3d 823, 824 (3d Cir.1994) (stating that "we see no principled way to distinguish a challenge to a prior conviction used to justify an enhancement under the guidelines from a prior conviction used to justify an enhancement under the Armed Career Criminal Act").

In this case, Ramsey's vacated state conviction did not enhance his *sentence,* just his Criminal History Category. The government correctly notes that even if Ramsey can no longer be categorized as a career offender, his United States Sentencing Guidelines sentence range would not be affected. His Offense Level was calculated based solely on the crimes that he was convicted of in his federal proceeding, without reference to any past crimes. Thus, his Combined Adjusted Offense Level was properly determined to be 39, which would not be altered by the state court's vacating one of his prior convictions. His past offenses were only relevant to his Criminal History Category. Based on his prior offenses, the court initially found that he had a criminal history score of 12. After including the career offender enhancement, the court found that his Criminal History Category was VI. A defendant with a Criminal History Category of VI and a Combined Adjusted Offense Level of 39 is subject to a sentence ranging from 360 months to life. The court sentenced Ramsey to the lowest point on the range, 360 months. Nonetheless, even if one of Ramsey's prior felony convictions were vacated, he would still have a criminal history score of 9, which corresponds with Criminal History Category IV. A defendant with a Criminal History Category of IV and a Combined Adjusted Offense Level of 39 is subject to the same 360 month to life sentence. Accordingly, the guideline range would be unchanged and even if there were any error, it was harmless.[FN7]

> FN7. Ramsey's career offender enhancement only impacted his sentence for counts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

one, two, eleven, and six; counts four, five, and thirteen required the application of consecutive mandatory sentences pursuant to 18 U.S.C. §§ 924(c) and 844(h).

Because the two Criminal History Categories offer an identical range of sentences, Ramsey was essentially sentenced without regard to his career offender status. Cases applying the rule of *Custis* have resentenced the defendant when his sentence was actually increased due to his career offender categorization. *See United States v. Cox,* 83 F.3d 336, 339 n. 2 (10th Cir.1996) (noting that without considering the defendant's prior convictions, his sentencing range would be 121-151 months, rather than 135-168 months); *United States v. Nichols,* 30 F.3d 35, 36 (5th Cir.1994) (resentencing appropriate where district court enhanced defendant's sentence to 262-months imprisonment from a sentencing range of 41 to 51 months); *Candelaria v. United States,* 247 F.Supp.2d 125, 126 (D.R.I.2003) (explaining that if defendant were not subject to career offender enhancement, his range of imprisonment would be 89 to 108 months, rather than 188 to 235 months). Accordingly, even if Ramsey is no longer properly categorized as a career offender, his sentence should not be reconsidered, because his career offender categorization was irrelevant to the sentence the court imposed.[FN8] *See Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992) (holding that sentencing error is harmless where the "error did not affect the district court's selection of the sentence imposed"); *United States v. Slaughter,* 238 F.3d 580, 586 (5th Cir.2000) (declining to address the merits of a claim because defendant conceded that "the correction of this alleged error would not change the applicable guideline sentencing range"); *United States v. Sanders,* 41 F.3d 480, 486-87 (9th Cir.1994) (noting that "with or without the contested point, [the defendant's] sentencing range is fifteen to twenty-one months," and thus, any error in adding the contested point was harmless); *United States v. Cox,* 934 F.2d 1114, 1125 (10th Cir.1991) (finding that resentencing unnecessary because a mistake that added two points to the defendant's criminal history score did not "affect defendant's appropriate

guideline sentencing range"); *Walker v. United States,* 2006 WL 36862, at *6 (E.D.Tenn. Jan.5, 2006) (finding in ineffective assistance of counsel case that there was no prejudice where contested two-level enhancement did not affect defendant's guideline sentencing range). Because even if Ramsey had not been subject to the career-offender enhancement, the court could not have sentenced him to a shorter term of imprisonment than the 360-month term that he received, this claim will be denied.

> FN8. The court notes that if Ramsey were to be resentenced, the Sentencing Guidelines would be advisory, rather than mandatory. Nonetheless, in *Lloyd v. United States,* 407 F.3d 608 (3d Cir.2005), the Third Circuit concluded that the rule in *Booker* is not retroactively applicable to cases on collateral review. Thus, the fact that the Sentencing Guidelines would no longer be mandatory during a resentencing should not militate toward allowing the resentencing.

B. Ramsey's *Booker/Apprendi* Claim

*4 In his second claim, Ramsey argues that the court violated his Sixth Amendment rights, as interpreted by *Booker,* by enhancing his guideline sentence based on facts that were neither admitted by him nor found by the jury. He further argues that despite the Third Circuit's holding that *Booker* is not retroactively applicable on collateral review, he should be able to present a *Booker* claim in this collateral action because he raised an *Apprendi* argument on direct appeal.[FN9] Because the rule of *Booker* is not available to a defendant on collateral review, even if the defendant raised an *Apprendi* claim on direct appeal, this claim will be denied.

> FN9. Specifically, on direct appeal, Ramsey argued that "the District Court committed plain error under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in sentencing Mr. Ramsey pursuant to adjustments of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

sentencing guidelines where the elements of the adjustments were not pleaded in the indictment nor charged to the jury as elements requiring proof beyond a reasonable doubt."

As Ramsey concedes, in *Lloyd v. United States,* 407 F.3d 608, 615-16 (3d Cir.2005), the Third Circuit held that "*Booker* announced a rule that is 'new' and 'procedural,' but not 'watershed,' [so] *Booker* does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date *Booker* issued."However, Ramsey attempts to distinguish his case due to the fact that the defendant in *Lloyd* may not have challenged the district court's application of the Sentencing Guidelines on appeal, whereas Ramsey did raise such a challenge. However, this distinction is not meaningful both because the challenge Ramsey seeks to raise must be made pursuant to *Booker,* not *Apprendi,* and because in retroactivity jurisprudence the important issue is whether the case is presently on direct or habeas review, not whether the defendant correctly anticipated a future Supreme Court opinion.

First of all, *Booker* announced a new rule that is distinct from the rule of *Apprendi.*As the Third Circuit stated, "post-*Apprendi* but pre-*Blakely,* a court would not have believed itself compelled to conclude that what became the '*Blakely* rule' was constitutionally required."*Lloyd,* 407 F.3d at 613. *See also Guzman v. United States,* 404 F.3d 139, 142 (2d Cir.2005) (stating that the result in *Booker* "was not dictated by *Apprendi*" ). Thus, the fact that Ramsey raised an *Apprendi* claim on direct appeal is irrelevant to his current claim. *Apprendi* dealt with facts that increased the maximum legal sentence, not the Sentencing Guidelines. *Apprendi* did not rule that it was a Sixth Amendment violation for a court to enhance a defendant's sentence under the United States Sentencing Guidelines based on facts neither found by a jury nor admitted by the defendant; *Booker* did. If Ramsey seeks to raise such a claim, he must assert a claim based on *Booker,* not *Apprendi.*As the Ninth Circuit has explained:

[The defendant] attempts to bypass the question of whether *Blakely* applies retroactively to cases on collateral review by arguing that *Apprendi* was decided before our decision on direct appeal and *Blakely* did no more than "clarif[y]" that *Apprendi*"applie[d] equally to any facts that enhance maximum sentences within a guideline sentencing system."We recently agreed with the proposition, however, that *Blakely*"did more than just apply *Apprendi;* it created a new rule that was not compelled by *Apprendi* or its progeny."

**\*5** *United States v. Triplett,* 2005 WL 2931929, at \*3 n. 4 (9th Cir. Nov.7, 2005). Thus, in order to challenge the court's application of the Sentencing Guidelines, Ramsey must present a claim based on the Supreme Court's decision in *Booker* (which, of course, would fail, since the Third Circuit has ruled that *Booker* is not retroactively applicable on collateral review).

Additionally, while the Third Circuit has not explicitly so held, the Tenth Circuit has found that the fact that a defendant raised an *Apprendi* claim on direct appeal does not preserve the defendant's rights to subsequently bring a *Booker* claim on collateral review. *See Allen v. Reed,* 427 F.3d 767 (10th Cir.2005) (stating "we have expressly held that *Blakely* did not announce a watershed rule of criminal procedure which would apply retroactively to petitioners on collateral review who raised *Apprendi* on direct appeal"); *United States v. Anderson,* 133 Fed. Appx. 549 (10th Cir.2005) (stating "an *Apprendi* claim [raised on direct appeal] does not preserve a *Blakely* (now *Booker* ) claim"); *see also United States v. Hoffner,* 2005 WL 3078220, at \*5 (E.D.Pa. Nov.16, 2005) (explaining that court would not accept defendants' argument that their counsel was ineffective for failing to raise *Booker*-like claim, before *Booker* was issued, in part because to do so would "be creating a giant loophole to circumvent the non-retroactivity of *Booker*" );*United States v. Agramonte,* 366 F.Supp.2d 83 (D.D.C.2005) (defendant raised *Apprendi* claims on appeal, but still was not permitted to assert *Booker'* s rule on collateral review). The court finds these rulings to be persuasive, particularly since the de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

fendant has presented no case law to support the massive exception to the non-retroactivity of *Booker* that he proposes.

Indeed, the exception that Ramsey proposes does not comport with the carefully circumscribed limits of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Teague,* the Supreme Court held that "new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review."*Id.* at 304 (citation omitted). The Court created two exceptions to this general rule, providing that new rules of constitutional criminal procedure will be applicable on habeas review [FN10] where the new rule: 1) places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,"*id.* at 307 (internal quotation and citation omitted); or 2) is a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding,"*Beard v. Banks,* 542 U.S. 406, 417, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (internal quotation and citation omitted). The Court created a separate rule of retroactivity for cases on habeas review because of " 'the purposes for which the writ of habeas corpus is made available.'"*Teague,* 489 U.S. at 307 (quoting *Mackey v. United States,* 401 U.S. 667, 682, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part)). The Court noted that a key purpose of habeas corpus is to ensure that lower courts "apply the constitutional standards that prevailed at the time the original proceedings took place."*Id.* (internal quotation and citation omitted). So long as the court correctly applied the standards as they existed at the time, the ruling should generally not be disturbed because "application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect."*Id.* at 309.Thus, as detailed above, the Supreme Court created only two very narrow exceptions to the absolute bar on the retroactive applicability of new rules on habeas review. Indeed, the second exception has never been used. *See Beard,* 542 U.S. at 417 (stating "we have yet to find a new rule that falls under the second *Teague* exception"). Nonetheless, Ramsey asks this court to accept what is effectively a third exception, which would be available to a defendant who, on direct appeal, successfully anticipated a rule that would be announced by the Supreme Court at some later time. He cites no authority for this proposition and the court will not accept this argument. Such an exception would drastically expand the number of defendants who would be permitted to assert new rules on habeas review, and would therefore seriously undermine the principle of finality, which is at the root of *Teague'* s rule. Because the court concludes that applying the exception that Ramsey proposes would conflict with *Teague,* the court will not look beyond the rule of *Lloyd* in ruling upon Ramsey's case.

> FN10. Justice Harlan, whose theory of retroactivity was adopted in *Teague,* explained:

I realize, of course, that state prisoners are entitled to seek release via habeas corpus under 28 U.S.C. s 2241, while federal prisoners technically utilize what is denominated a motion to vacate judgment under 28 U.S.C. s 2255. However, our cases make these remedies virtually congruent and the purpose of substituting a motion to vacate for the traditional habeas action in the federal system was simply to alter one minor jurisdictional basis for the writ. As I do not propose to make any distinction, for retroactivity purposes, between state and federal prisoners seeking collateral relief, I shall refer throughout this opinion to both procedures as the writ of habeas corpus, and cases before us involving such judgments as cases here on collateral review.
*Williams v. United States,* 401 U.S. 667, 682, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (internal citation omitted).

**\*6** Thus, because *Booker* is not retroactively applicable on collateral review, Ramsey's claim based on that case must fail. Accordingly, this

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 8
Not Reported in F.Supp.2d, 2006 WL 328371 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

claim will also be denied.                                        Not Reported in F.Supp.2d, 2006 WL 328371
                                                                 (E.D.Pa.)

C. Certificate of Appealability                                  END OF DOCUMENT

　　Finally, the court must determine whether a
certificate of appealability should issue. The court
may issue a certificate of appealability only if the
defendant "has made a substantial showing of the
denial of a constitutional right."28 U.S.C. §
2253(c)(2). This requires that the defendant
"demonstrate that reasonable jurists would find the
district court's assessment of the constitutional
claims debatable or wrong."*Slack v. McDaniel,* 529
U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542
(2000).

　　Here, the court has determined that Ramsey's
two claims are without merit. The court is per-
suaded that reasonable jurists would not find this
assessment debatable or wrong. Therefore, Ramsey
has failed to make a substantial showing of the
denial of a constitutional right, and a certificate of
appealability will not issue.

　　An appropriate order follows.

### Order

　　AND NOW on this _____ day of February
2006, upon consideration of defendant Gary Ram-
sey's Motion to Vacate, Set Aside, or Correct Sen-
tence Pursuant to Title 28 U.S.C. § 2255 (Doc. No.
326), the government's supplemental response
thereto, the defendant's Memorandum in Support of
Claim Number 16, and the government's supple-
mental response thereto, it is hereby ORDERED that:
　　1. The defendant's motion is DENIED.
　　2. The defendant having failed to make a sub-
stantial showing of the denial of a constitutional
right, there is no ground to issue a certificate of ap-
pealability.
　　3. The Clerk shall mark this case CLOSED for
statistical purposes.

E.D.Pa.,2006.
U.S. v. Ramsey

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ATTACHMENT   D

Westlaw.

248 Fed.Appx. 409

248 Fed.Appx. 409, 2007 WL 2745769 (C.A.3 (N.J.))

**(Cite as: 248 Fed.Appx. 409)**

Page 1

**C**

U.S. v. Babalola

C.A.3 (N.J.),2007.

This case was not selected for publication in the Federal Reporter.Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)

United States Court of Appeals,Third Circuit.

UNITED STATES of America

v.

Abosede Elizabeth BABALOLA, a/k/a Elizabeth Martins Abosede Elizabeth Babolola, Appellant.

**No. 06-3887.**

Submitted Under Third CircuitL.A.R. 34.1(a) Sept. 20, 2007.

Filed: Sept. 21, 2007.

**Background:** Petitioner subject to removal proceedings filed petition for writ of error coram nobis seeking vacation of guilty plea to credit card fraud. The United States District Court for the District of New Jersey, Harold A. Ackerman, J., denied writ, and petitioner appealed.

**Holdings:** The Court of Appeals, Garth, Circuit Judge, held that:

(1) writ of error coram nobis would not issue to require vacation of ten plus year-old guilty plea to credit card fraud, and

(2) claim of ineffective assistance of counsel was not grounds for issuing writ.

Affirmed.

West Headnotes

**[1] Criminal Law 110 ☞1482**

110 Criminal Law

    110XXX Post-Conviction Relief

110XXX(B) Grounds for Relief

    110k1479 Arraignment and Plea

        110k1482 k. Advice. Most Cited Cases

Writ of error coram nobis would not issue to require vacation of ten plus year-old guilty plea to credit card fraud based on petitioner's claim that plea counsel failed to advise her of immigration consequences of guilty plea; petitioner's visa had long expired by the time she entered plea, and petitioner did not nothing to address immigration status with United States until subsequent removal proceedings and provided no sound reasons for failure to do so.

**[2] Criminal Law 110 ☞1482**

110 Criminal Law

    110XXX Post-Conviction Relief

110XXX(B) Grounds for Relief

    110k1479 Arraignment and Plea

        110k1482 k. Advice. Most Cited Cases

Petitioner was not prejudiced by plea counsel's alleged misadvice regarding immigration consequences of guilty plea to credit card fraud, and thus, guilty plea was not fundamentally flawed and was not justification for writ of error coram nobis to vacate plea; petitioner never asserted her innocence and acknowledged her guilt, she failed to show she would have avoided conviction had she gone to trial, and she received highly favorable cooperating agreement as result of plea. U.S.C.A. Const.Amend. 6.

**\*409** On Appeal from the United States District Court for the District of New Jersey (Crim. No. 96-210), District Judge: Honorable Harold A. Ackerman.

George S. Leone, Camelia Valdes, Office of United States Attorney, Newark, NJ, for United States of America.

Peter W. Till, Law Office of Peter W. Till, Springfield, NJ, for Abosede Elizabeth Babalola.

Before: SLOVITER, SMITH and GARTH, Circuit Judges.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

248 Fed.Appx. 409
248 Fed.Appx. 409, 2007 WL 2745769 (C.A.3 (N.J.))
**(Cite as: 248 Fed.Appx. 409)**

Page 2

**\*410 OPINION**

GARTH, Circuit Judge:

**\*\*1** In this appeal, Abosede Elizabeth Babalola challenges the district court's decision denying her motion for a writ of *error coram nobis,* by which means she sought to vacate her now more than ten year-old guilty plea. Babalola, who is now in removal proceedings before the United States Citizenship and Immigration Services ("USCIS"), contends that her attorney misadvised her about the immigration consequences of pleading guilty, thereby rendering constitutionally ineffective assistance of counsel. We will affirm.

I.

Babalola entered the United States on November 10, 1982 as a B-2 nonimmigrant visitor with authorization to remain in the United States until May 9, 1983. On April 16, 1996, Babalola pled guilty, pursuant to a plea agreement, to a one-count information charging her with credit card fraud in violation of 18 U.S.C. § 1029(a)(2). At the Rule 11 hearing, Babalola stated that between October 1993 and November 1994, she received, endorsed and deposited 15 credit card access checks drawing on accounts of individuals she did not know that were given to her by her boyfriend, Ouakin. While Babalola stated that she initially believed the checks were legitimate, she realized by March 1994-or before depositing the last nine checks-that the checks had been fraudulently obtained.

In the plea agreement, the parties stipulated that Babalola's base offense level was 12 and that she was entitled to a two-level reduction for acceptance of responsibility, leaving her with a total offense level of 10. The plea agreement also provided that if Babalola provided substantial assistance in the government's investigation, the government would file a motion under U.S.S.G. § 5K1.1. The Pre-sentence report ("P.S.R."), dated July 26, 1996, stated that "Babalola ... is an illegal alien," a fact which Babalola did not (and does not now) contest.

At sentencing on September 4, 1996, the dis-

trict court, without objection, calculated Babalola's guidelines range as 10 to 16 months' imprisonment. However, the court granted the government's motion for a downward departure under U.S.S.G. § 5K1.1, and sentenced Babalola to five years' probation with a six month period of home confinement.FN1 Among several special conditions imposed at sentencing, the district court stated that "[t]he defendant shall cooperate with Immigration and Naturalization Service to resolve any problems with her status in the United States." Babalola did not appeal her conviction or sentence and did not file a motion under 28 U.S.C. § 2255. Babalola completed her term of probation in 2001.

> FN1. The court declined, however, to grant Babalola's request for a downward departure pursuant to U.S.S.G. § 5H1.6 (Family and Community Ties), based upon her claim that a term of imprisonment would leave no one to care for her three young children.

II.

Babalola subsequently sought adjustment of immigration status to that of a lawful permanent resident as an immediate relative of her United States citizen spouse. USCIS denied Babalola's application to adjust status on August 12, 2004 because of her criminal conviction. On August 30, 2004, USCIS served Babalola with a Notice to Appear, charging her with being removable (1) under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B) for overstaying her visa; and (2) under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for having committed the "aggravated felony" of credit card fraud. After certain proceedings\*411 before the Immigration Court, the details of which are not relevant to the present case, the Board of Immigration Appeals issued a decision reopening Babalola's removal proceedings on the grounds that the government had not established removability on either ground by clear and convincing evidence. Babalola is scheduled to appear before the immigration judge on March 12,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

248 Fed.Appx. 409
248 Fed.Appx. 409, 2007 WL 2745769 (C.A.3 (N.J.))
(Cite as: 248 Fed.Appx. 409)

Page 3

2008 for further removal proceedings.

### III.

**\*\*2** On April 12, 2006, five years after completing her term of probation, Babalola filed a motion for a Writ of Error *Coram Nobis* with the district court seeking to vacate her April 16, 1996 guilty plea. Babalola argued that her attorney had provided her with "misinformation" about the effect a guilty plea would have on her immigration status. Specifically, Babalola claimed that when she asked her attorney about the "effect ... the guilty plea might have on citizenship and even possible deportation" he replied that she "had nothing to worry about." Babalola asserts that, but for this incorrect advice, she would not have pled guilty. D. Br. at 18.

On August 15, 2006, the district court denied Babalola's motion. The district court relied upon *Evola v. Carbone*, 365 F.Supp.2d 592 (D.N.J.2005)*aff'd sub nom. Evola v. AG of the United States*, 190 Fed.Appx. 171 (3d Cir.2006), to find that Babalola had not established fundamental error in her plea proceedings as a result of ineffective assistance of counsel, because she "failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, she would have insisted on going to trial, and that the result of the proceeding would have been different." Dist. Ct. Op. at 4.

### IV.

The writ of error *coram nobis* is an "infrequent" and "extraordinary" form of relief that is reserved for "exceptional circumstances." *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir.1989); *United States v. Osser*, 864 F.2d 1056, 1059 (3d Cir.1988); *United States v. Gross*, 614 F.2d 365, 368 (3d Cir.1980) (per curiam); *see Carlisle v. United States*, 517 U.S. 416, 429, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (noting that the remedy is so extreme that it "is difficult to conceive of a situation in a federal criminal case today where [a

writ of coram nobis] would be necessary or appropriate."). It is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has completed serving his sentence and is no longer "in custody" for purposes of 28 U.S.C.A. § 2255. *Stoneman*, 870 F.2d at 105-06.

Because of the strong interest in finality of judgments, the standard for a collateral attack on a conviction via a writ of error *coram nobis* is more stringent than the standard applicable on a direct appeal. *Gross*, 614 F.2d at 368. Indeed, because a defendant seeking *coram nobis* relief has already completed her sentence, the interests in favor of revisiting the judgment are even less than in the habeas context, where the petitioner is still "in custody." *Osser*, 864 F.2d at 1060; *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir.1968) (unlike habeas, where part of sentence remained unserved, no opportunity or incentive in coram nobis setting to retry defendant using newly discovered evidence where sentence already served). Thus, "[o]nly where there are errors of fact of 'the *most fundamental kind*, that is, such as to render the proceeding itself irregular and invalid'... can redress be had,"*Stoneman*, 870 F.2d at 106 (emphasis added); *United States v. Cariola*, 323 F.2d 180, 184 (3d Cir.1963) (quoting *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129 (1914)), and "relief will be granted only when circumstances compel **\*412** such action 'to achieve justice.' " *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Despite this heavy burden, both the Supreme Court and this court have reaffirmed the continued existence of *coram nobis* relief in the appropriate circumstances. *Id.* (holding that *coram nobis* relief is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a)).[FN2]

> FN2. *See also United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 744 (3d Cir.1979) (declining to notice alleged Sixth Amendment violation raised for the first time on appeal because the defendant corporation could raise the objection before the district court in a *coram nobis* pro-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

248 Fed.Appx. 409
248 Fed.Appx. 409, 2007 WL 2745769 (C.A.3 (N.J.))
(Cite as: 248 Fed.Appx. 409)

Page 4

ceeding); *United States v. Steese,* 144 F.2d 439, 442 (3d Cir.1944) (vacating and remanding to the district court for consideration of defendant's constitutional claims by writ of error *coram nobis); Rothman v. United States,* 508 F.2d 648, 655-56 (3d Cir.1975) (Garth, J., Concurring) (petitioner's habeas petition should be treated as an application for a writ of *coram nobis* and remanded for appropriate proceedings).

**3 In addition to the cardinal requirement for issuance of the writ that "errors of ... the most fundamental kind" had infected the proceedings, *Mayer, supra,* this court has articulated several other threshold conditions to *coram nobis* relief. A *coram nobis* petitioner must also show that (1) he is suffering from "continuing consequences of the allegedly invalid conviction,"*Stoneman,* 870 F.2d at 106 (citing *Morgan,* 346 U.S. at 512-13, 74 S.Ct. 247); (2) there was no remedy available at the time of trial, *id.; Osser,* 864 F.2d at 1062, and that (3) " 'sound reasons' exist for failing to seek relief earlier." *Id.* Of course, earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise. *Cariola,* 323 F.2d at 184.

V.

[1] Babalola's motion for *coram nobis* relief was properly denied. First, Babalola has failed to meet the threshold requirement of demonstrating that " 'sound reasons' exist for failing to seek relief earlier." *Stoneman,* 870 F.2d at 106. Although removal proceedings were first instituted against Babalola in 2004, it is undisputed that her visa was long expired when she entered her guilty plea on April 16, 1996. Had Babalola promptly and properly complied with the district court's direction at sentencing to "cooperate with Immigration and Naturalization Service to resolve any problems with her status in the United States," she would have immediately discovered her claim. There is no "sound reason" for her failure to do so. Even if Babalola only became aware of the consequences of her plea

when she was served with a Notice to Appear in August 2004, Babalola offers no justification-let alone any "sound reasons"-for waiting an additional two years before filing a motion for a writ of error *coram nobis.*

VI.

[2] More importantly, as the district court correctly held, Babalola failed to establish *fundamental error* in her plea proceeding that would justify granting the writ. Babalola claims that her attorney provided ineffective assistance of counsel by providing incorrect advice regarding the impact of her guilty plea on future removal proceedings. This court has held that ineffective assistance of counsel constitutes a fundamental defect sufficient to subject such a tainted conviction to collateral attack via a writ of *coram nobis. United States v. Rad-O-Lite of Phila., Inc.,* 612 F.2d 740, 744 (3d Cir.1979). But Babalola has not set forth a valid claim of ineffective assistance of counsel because her allegations of attorney misinformation fail to satisfy the two-part test set forth by the Supreme Court in *413Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* in order to establish a claim for ineffective assistance of counsel:

[t]he defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Both *Strickland* prongs must be met in order to merit relief.... With regard to the second prong, a reasonable probability is one that is sufficient to undermine confidence in the outcome.

**4 *Carpenter v. Vaughn,* 296 F.3d 138, 149 (3d Cir.2002) (internal quotations and citations omitted).

It is an open question in this court whether counsel's error in advising a client regarding the collateral consequences of a guilty plea-such as the effect of the plea on future immigration proceedings-is fundamental to that conviction such that it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

248 Fed.Appx. 409
248 Fed.Appx. 409, 2007 WL 2745769 (C.A.3 (N.J.))
**(Cite as: 248 Fed.Appx. 409)**

Page 5

can constitute objectively unreasonable representation under the first prong of *Strickland.* In *United States v. Nino,* 878 F.2d 101 (3d Cir.1989), this court declined to decide "whether counsel's failure to advise a client about the deportation consequences of a guilty plea can constitute deficient representation absent special circumstances." *Id.* at 105. Babalola attempts to distinguish *Nino* on the grounds that Nino's attorney failed to provide *any advice* regarding the consequences of his plea on removal proceedings whereas Babalola alleges that her attorney *affirmatively misinformed* her. Babalola thus asks this court to adopt a *per se* rule that the affirmative provision of misinformation regarding the consequences of a guilty plea on subsequent removal proceedings constitutes unreasonable representation under *Strickland.* Babalola cites a line of New Jersey cases endorsing such a rule. *See State v. Garcia,* 320 N.J.Super. 332, 727 A.2d 97 (App.Div.1999); *State v. Vieira,* 334 N.J.Super. 681, 687-88, 760 A.2d 840, 843 (Law Div.2000). It is not necessary to decide the issue in this case, FN3 however, because Babalola has in any event failed to establish the second, or prejudice, requirement of the *Strickland* test.

> FN3. We assume, for the purposes of this appeal, the truth of Babalola's assertions that her attorney provided her with misinformation about the consequences that pleading guilty could have upon subsequent removal proceedings, allegedly advising her in this regard that she had "nothing to worry about." We note, however, that this claim is rather implausible in light of the fact-explicitly stated in the P.S.R.-that at the time of her guilty plea in 1996, Babalola's B-2 visa had been expired for more than thirteen years and that she was therefore an "illegal alien." As a result, Babalola knew or should have known at the time of the plea hearing that her status in the United States was problematic regardless of how she chose to plead.

To establish prejudice under *Strickland,* a de-

fendant must show "that there is a reasonable probability that but for his counsel's errors *the result of the proceeding would have been different.*" *Carpenter,* 296 F.3d at 149; *Nino,* 878 F.2d at 105 (emphasis added). In the guilty plea context, this court has interpreted *Strickland's* prejudice prong to require the defendant to show a reasonable probability *both* that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,"*Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), *and* that had he not pleaded guilty he would not in any event have been convicted at trial. *Nino,* 878 F.2d at 105. In *Nino,* for example, the court found no prejudice because the record was "replete with evidence of petitioner's guilt," and therefore "even had petitioner been advised of the deportation consequences of his guilty plea, he would *414 have pled guilty anyway *or, had he not done so, been found guilty after trial.*" *Id.* (emphasis added).

Here, as in *Nino,* Babalola has failed to demonstrate a reasonable probability either that she would not have pled guilty had she known that doing so could affect her immigration status or that, had she not taken the plea, she could have avoided conviction at trial. As the district court noted, Babalola does not, in her motion for a writ of *coram nobis,* assert that she is factually innocent. Nor has she ever made such a claim. Indeed, at the Rule 11 hearing, Babalola expressly and unequivocally admitted guilt. A48-49 ("Q: Would that be correct, there were nine checks where you knew that what you did was wrong and unlawful? A: Yes, your Honor.").FN4 Moreover, as in *Nino,* the record indicates that the government had overwhelming evidence of Babalola's guilt, including her confession that she cashed numerous credit card access checks from payors unknown to her as well as bank records confirming her unlawful activity.

> FN4. Although Babalola initially asserted that she did not know that the payors listed on the checks had not authorized payment to her or Ouakin, she subsequently admitted that she knew by March 1994-or at least before she cashed the last nine

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

248 Fed.Appx. 409
248 Fed.Appx. 409, 2007 WL 2745769 (C.A.3 (N.J.))
**(Cite as: 248 Fed.Appx. 409)**

Page 6

checks-that they were unauthorized. This admission came after a thorough and searching inquiry by the district court during which the court advised Babalola that "we don't accept pleas of guilty from innocent people. That's very, very important in this Court." Babalola does not dispute or attempt to retract any of her Rule 11 admissions.

**\*\*5** In addition, in return for her plea, Babalola received a highly favorable cooperating agreement under which she served only five years' probation with a six month period of home confinement rather than the 10-16 month term of imprisonment dictated under the then mandatory guideline regime. In light of the overwhelming evidence of her guilt and the lenity of the government's plea offer, it is highly unlikely that Babalola would have risked a trial which, the evidence shows in any event almost certainly would have resulted in conviction and imprisonment. Babalola has thus failed to demonstrate that "there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different,"*Nino,* 878 F.2d at 105. Babalola's ineffective assistance of counsel claim therefore fails under *Strickland,* leaving no basis for her claim of fundamental error in her plea proceedings that would justify relief by writ of error *coram nobis.*

### VII.

The order of the district court, dated August 16, 2006, denying Babalola's motion for a writ of error *coram nobis,* will be affirmed.

C.A.3 (N.J.),2007.
U.S. v. Babalola
248 Fed.Appx. 409, 2007 WL 2745769 (C.A.3 (N.J.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.